The fourth case for oral argument this morning is number 20-2161, Western Missouri, L.G. v. Keisha Edwards. All right, Mr. Baker. May it please the court, my name is... Please speak up, Mr. Baker. Mr. Baker, this is Judge Smith. Be sure your mic's close to you and speak up a little bit. Let's see here. Is this any better? That's better. All right, I've got it right up next to my face and I can't get any closer than this. I apologize, I don't have the video. We've had power off here for the last two hours and it's just a wonderful time to be in Kansas City. My name is David Baker and I do represent the appellant in this case, Ms. Edwards. She's a police officer with the city of Columbia assigned to work at one of the high schools there in Columbia. And what we're here about today is a question of whether or not taking the allegations of fact as true contained within the amended complaint, whether a viable Fourth Amendment unconstitutional seizure claim has been made against Officer Edwards. This issue was before the district court on a 12B6 motion, so we don't have to concern ourselves with issues of disputed fact. We're accepting the allegations of the complaint as true. And the question before this court is accepting those allegations of fact against Officer Edwards as true as a sufficient Fourth Amendment claim been presented. We've argued that the qualified both prongs of the qualified immunity analysis are in play in this case. And for the reasons that we've outlined in the brief and we're going to talk about here this morning, respectfully, we submit that the district court got it wrong and that Officer Edwards is entitled to qualified immunity on the allegations. Counselor, I'm sorry. Can you hear me? This is Judge Arnold. Yes, sir. Speaking of the complaint, as you just were, I noticed that the complaint describing the initial participation of Ms. Edwards in this process was written in the passive. It indicated that the young woman involved here was summoned. It didn't say, I think, it didn't say that Ms. Edwards did the summoning. Is that correct? That is absolutely correct, Judge. Is that significant in your view? It's part of the reasonableness standard that I think is at play in deciding a Fourth Amendment claim under the Graham analysis. The district court, as part of the reason that it found that qualified immunity did not apply, is that it assumed and made a statement that the officer summoned the plaintiff to the office. That's simply not true. As we pointed out in our reply brief, we can take and you should take reasonable inferences from the complaint, but you can't add facts to the complaint. I think that was more than just a reasonable inference. The allegations against my officer are really pretty simple. They're relatively few, and that is when LG, the plaintiff, came to the school office, Officer Edwards informed her that there were other police officers there to ask her questions, and then she took, escorted LG into the room where the other officers were located. As she got to the door where the other officers were located, an assistant principal asked if his help was needed, and she told him no. She then opened the door, allowed Ms. Edwards to go in, and closed the door behind her. That's it. Those are the only allegations of fact. Well, there's also an allegation about a conversation she had after the interview was complete with the other two detectives, but those are the only allegations of fact that an unconstitutional seizure of the person of the plaintiff. Counsel, I have one other question. I'm sorry to interrupt. This is Judge Arnold again. I had one other question about the complaint or your position with respect to what happened here. What is the state of the record if there is one on what the officer's position was at this school? Is she a regular member of the police force, or is she generally assigned to a school as a resource officer? Or is she, is her employment somehow... Sorry, go ahead. No, I'm sorry. I love cell phones when they work appropriately, but it's just not as good as... Yeah, that's fine. That's all right. The allegations of the complaint, as I recall it, are that she's a member of... I'm sure counsel for plaintiff can correct me if I'm wrong, but that she's a Columbia police officer serving as a school resource officer for the high school in question on this case. What does that mean? Do we know what that means, school resource officer? Generally, I can tell you, sir, that a school resource officer is an officer assigned to the, in this case, a Columbia police officer. She's not an employee of the school district. She is a Columbia police officer assigned. Her primary task is during the school day, she's there to help the kids and protect the school. Okay, thank you. Before you move on, would this case be different if, and I didn't see an allegation, you can correct me if I'm wrong, but if, for example, she knew, given that she's a member of the room that we're going to speak to, LG did not have a warrant, would that have made any difference? So she knows, facts change, she knows there's no warrant, leads them into the office and closes the door. Different case? That's not alleged. And I'm trying to, I'm just trying to think it through hypothetically if that's going to change my position on this. And my initial impression is that, I don't know what my initial impression is. It's just, it's just not what the allegations of fact in this case are. So I hadn't, I have not had an opportunity to consider that judge. That's fair. I mean, what I'm really getting at is, is there any kind of collective knowledge thing we have going on here? I think the answer is probably no, but is she, because she's an officer, she attributed with what the two officers in the office who actually conducted the interview. You know, when I think of the collective knowledge, connective collective knowledge issue, what I'm generally thinking of is when one officer does one part of an investigation, another officer does another part of the investigation. And a third officer then relies on those first two parts and putting together a probable cause statement or something of that nature. And that's just not this case. This case is really about, she has the allegations, she escorted the plaintiff from the office to the room and closed the door. And if we're going to be critical of her about closing the door, I mean, this happened during the school day. This happened during finals between classes and they were getting ready to discuss a potential sexual assault of another student. And there's no allegation that there was any suspicion that plaintiff was a suspect in that assault. They simply believe that, you know, it happened at a residence that had the same first name of the plaintiff. And so she closed the door, which we've argued in our brief, and that before the district court, that was entirely reasonable to do when talking about a sensitive nature or sensitive topic of this. And, you know, it's been a long time since I was in high school, but between classes was a pretty busy time if you're going to be trying to talk in private. Mr. Baker, this is Judge Smith. Is there any allegation about who was responsible for removing LG from class? There's no allegation about that. The only allegation is that she was asked to come down and the teacher told the asker, which I believe was a receptionist at the high school. But the teacher that in the class that the plaintiff was taking the original final in said she's going to finish this or something to the effect she's going to finish this final and we'll come back in later. Okay. What's the allegation as to the role that your client played? Uh, is it your view that the allegation is that she was merely an escort? My view is that the allegations accepting them is true, which I do. The allegations are that she simply walked with the plaintiff, but she told when the plaintiff came to the office, she told the plaintiff that there were officers there to cook the plaintiff into the room with the other officers. Did she direct her into the room? There's no allegation about that one way or the other. Nor is there an allegation that the plaintiff at any time was hesitant or said she didn't want to go. And another important fact is that the allegations are that it was only during the interrogation that plaintiff thought she was, that she was not free to leave. There's no allegation of fact that she had that belief at any time before my client left. And I can't see a clock. Did your client stay in the vicinity after placing LG in the room with the other two officers? There is no allegation as to that either way. The allegation is merely that after she placed the plaintiff in the room with the other two guard outside, there's no allegation that she walked away. As I recall, the amended complaint is not silent to that question. Thank you. And then the other issue, and I don't know how much time I have, I can't see a screen. You've got four minutes, about four and a half minutes. Then I'll, I want to make one more point and that is this. There was certainly, I'm moving to the second prong of the qualified immunity analysis. I am unaware of any case law from this circuit or any other that would address this issue. And it put my lady on notice that what she was doing was clearly contrary to established law. When we don't have any circuit authority about this, the case law instructs us that we have to look for a robust series of cases from elsewhere. And I've certainly not seen that in any of the briefing or any of the district court's opinion. And so I think we've got strong arguments on both prongs of the qualified immunity analysis. And with that, I'll reserve the remainder of time. So one other question, please, counsel. So is it your position that if this young woman was seized, that your client did not do the seizing? And in any event, even if somebody might say that she did, there was no, it was not clearly established that what she did was a seizure. It was not, that is exactly the point I'm trying to make is that the allegations accepting them as true was not clearly established under similar facts, which I think the qualified second prong of the qualified immunity analysis requires. There was nothing to put her on notice that, oh my gosh, I shouldn't be doing this. But what particular part of the claim are you pointing to when she said I shouldn't be doing this? Doing what? Participating by escort. What I'm pointing at or trying to is that by pointing at the idea that by merely walking her down the hall, telling her there are people there to talk to her and closing the door after she went in during a busy changing class, there was nothing to tell her that this is a seizure and I should not be doing this under well-established existing precedent, which is the second prong of the qualified immunity. Thank you very much. Yes, sir. Thank you. Thank you, Mr. Baker. Mr. Hurth. You're muted, Mr. Hurth. Thank you, your honor. Andy Hurth on behalf of the plaintiff, Apolli L.G. The qualified immunity shields public officials from liability for bad guesses in gray areas, not for transgressing bright lines. And here the district court determined based on the allegations and reasonable inferences therefrom that Officer Edwards transgressed a bright line. And the basis for that was L.G.'s allegations that she was seized within the meaning of the Fourth Amendment, that that seizure was per se unreasonable because there was no warrant, probable cause, exigent circumstances, or any other exception of the warrant requirement. Counsel, this is Jed Smith. What does the complaint allege as to the acts that constituted seizure on the part of Ms. Edwards, or Officer Edwards? When L.G. arrived at the office, Officer Edwards said, the police are here to question you, and walked with her to a room and placed her in this room with police officers and closed the door. The only other factual... It's your view that the seizure took place when that announcement was made by Officer Edwards to L.G. as to her purpose for being in the room and then placing her in the room and closing the door. That's your allegation of seizure, the moment of seizure. A seizure occurs when, considering the totality of circumstances, a reasonable person would not feel free to leave or ignore the request of the officer. And as the district court said, any reasonable 16-year-old in this situation who's been summoned to the office and a police officer says, you're going to be questioned by the police, and walks that student to a room, no reasonable 16-year-old is going to feel like they are able to leave. And in fact, she alleged that she did not feel like she was able to leave. Mr. Baker points out that allegation is made in the context of being in the room, that when she was being interrogated, she did not feel like she was free to leave. But I think it's a reasonable inference that that feeling of not being free to leave and the seizure occurs from the moment that Edwards tells her why she's there and that she's about to be questioned. Now, I think one important point I want to make here is that Edwards did not, in the district court or now, argue that there was, in fact, a warrant or that there was reasonable suspicion, probable cause, exigent circumstances or anything like that. So really, the issue is, was there a seizure? And if there was a seizure, would a reasonable officer have known that that seizure violated clearly established Fourth Amendment rights? So, as I mentioned before, the Supreme Court has held in Nappy, Texas, that the standard for a seizure is when a, taking into account all circumstances surrounding the matter, the police conduct would have communicated to a reasonable person that they were not at liberty to ignore that request. And again, as I said, this is a 16-year-old straight-A student in high school in the principal's office being told by an officer that she's going to be questioned by the police and being led to a room. I think there's no question that a reasonable student in her possession would feel like she was free to leave, was not free to leave. Now, the, on appeal, Edwards makes a few arguments to claim that this was not a seizure. He says, or she says that there's no allegation that Edwards told the plaintiff that she had to meet with the officers. Well, the fact that she didn't say, you're being commanded to do this, I think is irrelevant. What matters is that she's a uniformed police officer at the school and is telling the student that she's going to be questioned. And I think, you know, a contrary ruling here would suggest that students are free to ignore school resource officers. And I can't imagine that that is the, is that- Is there an allegation in the complaint that the school resource officer was armed? The complaint doesn't say one way or the other. But there is also, Ms. Edwards argues that there's no allegation that LG indicated to her that she did not want to speak with the police. Well, again, I don't think that that is a reasonable 16-year-old would think that was an option to tell this officer, well, I don't want to, I'm not going to. And in addition to that, the assistant principal saw what was going on and asked if he was needed. And the officer, in fact, said no. You know, effectively isolating the student further from any adults who might have been in her corner, or at least serving as a guardian in that instance. Edwards also argues that she did not participate in the interrogation. But as the district court pointed out, that conflates the seizure with the interrogation. It doesn't matter whether she participated in the interrogation. In fact, I don't think it matters whether the police inside asked her any questions at all. What matters is that Edwards took her to this room and restrained her movement, essentially, by show of authority and that LG believed that she wasn't free to leave. What's the allegation as to the length of the detention? About 20 minutes, your honor. The questioning occurred for about 20 minutes as the allegation in the petition, or the complaint. Edwards also argues that all she did was close the door and that closing the door was reasonable in these circumstances. Well, you know, as I pointed out, I don't think she just closed the door. She closed the door to the detention. She led somebody into the room where the officers were there, told LG that she was going to be questioned and dismissed the inquiry of the assistant principal who asked whether he was needed. But, you know, even assuming that the issue was sort of limited to this door closure, I don't think the issue is whether that was reasonable. The test, generally speaking, for a seizure is that a seizure is per se unreasonable absent a warrant or probable cause of one of the exceptions. Now, the Supreme Court has relaxed that standard somewhat in the New Jersey, the TLO case, where the seizure itself or the search was instigated by school officials. And subsequently, decisions have said, well, if the police are there at the behest of the school official and they're simply helping a school official, then the standard is whether this search is reasonable without getting into whether there's probable cause. But those aren't the allegations here. The allegations here is that this was initiated entirely by the police. The fact that it happened at school is rather incidental, except, of course, we also allege that this is part of a pattern in practice that the Columbia Police Department questions students at school specifically for this reason, to avoid having their parents present. So the fact that this was- What's the law that puts Officer Edwards on notice  of the student's rights? So that second prong of the qualified immunity tests asks whether the contours of the right at issue were sufficiently clear that a reasonable officer would know. This court in the Bedoin versus Harsin case said that there's essentially three ways you can show that something's clearly established. One is you can cite existing court precedent with similar facts that sort of squarely govern the situation so that the officer had notice about these particular facts. Two, that a robust consensus of persuasive cases lay out the contours of the right. And the third way is that a general constitutional rule applied with obvious clarity. And our position would be that both the second and the third tests there are met. I'll start with the third, the general constitutional rule, as the district court pointed out, and as this court has said in Stoner v. Watlington, there is no debate that the right against unreasonable seizure is clearly established and has been clearly established for a long time. Does that change in the school setting somehow so that the right is not clearly established when you're in school? As I said, the TLO Supreme Court case relaxed the standard somewhat, but most of the courts have said that applies only when the school is directing or the school official is directing the search or the seizure. And I don't know, I could not find a case in which this court has expressly said that the TLO standard does not apply when we're talking solely about officers, but that's certainly the implication in the Kaysen v. Cook case that where this court held the relaxed standard of reasonableness rather than probable cause applied in a situation where the officer was really just working at the behest of the school. Here, that's not the case. This is purely the officer acting on the initiative of the police themselves. Would Ms. Edwards have actually, or Officer Edwards have actually known that? And in particular, I'm looking at the Kaysen v. Cook case decided by our court, 1987 case. And there, there was arguably more, a lot more that the school official did. And I just wonder whether somebody like Officer Edwards could look at that case and say, you know what? What I'm doing here is perfectly fine. I'm not on notice because of what they did in Kaysen  Well, I think, you know, Your Honor, you have to look at the general principle first. The general principle is that if you're going to seize somebody, you have to either have a warrant or you have to have probable cause or some other exception. The Supreme Court has come up with an exception to that that lowers the standard in a situation where the school is really doing it. And that's because the court has held that schools need to have a little more give. They need to have, because of their, you know, in local parentis status, because they are essentially school officers rather than agents of the police, they have to have a little more latitude. But there's nothing in this case that suggests the school was in any way involved. And so assuming that Officer Edwards had read Kaysen and was relying on Kaysen, I think it's unreasonable to say, well, that applies here simply because it happened at a school. I don't think that there's a reasonable, that that's a reasonable conclusion that an officer would draw. Counsel, why doesn't it, or does it, and are there cases that touch on this that Officer Edwards did not participate in the actual questioning of LG? Your Honor, I don't think it, I don't know of cases that make that point specific to whether if the officer is involved up to the point of questioning but doesn't ask questions. I'm not aware of a case directly on point, but what the case law does say is we look at when the seizure occurred. The seizure doesn't occur when questions start. The seizure occurs when the person sees, when a reasonable person in their position would not believe they were free to leave. And as alleged in the petition and a reasonable inference therefrom, LG did not believe that she was free to leave to ignore this request by a police officer when she got to the office and was told that she was going to be questioned and led to this room. The, I know my time is almost up. I think the, I want to make a point just generally speaking about qualified immunity and that the purpose of qualified immunity is to shield public officers from having to worry whether they're going to be held liable for making mistakes. But it is not intended to shield officers from violating essentially plain prescriptions from the constitution. And the right of being free from an unreasonable seizure is pretty clear. It's expressly what the constitution says. There's not a whole lot of wiggle room about when seizures are okay outside of the accepted. Counselor, I'm sure you're aware of the Supreme Court's recent emphasis that that awareness needs to be found in cases that aren't, that don't create just a generality of entitlement to constitutional protection, but something that specifically puts officers on notice that the behavior that they are engaging in is violative. Of citizenship. That's true, your honor. But the court has not said that there needs to be a case with essentially the same facts. And in fact, that would be a test that almost could be never satisfied. And this is a good example where if qualified immunity applies in this context, simply because it is not clearly established. So let's assume for a moment that it is a constitutional violation, but it is not clearly established. That's an exception that swallows the rule. It will never be clearly established because this case won't clearly establish it because it'll be kicked out on qualified immunity. So there's sort of a catch 22 here. On these facts, there's no way it could ever be clearly established. I see my time, I'm out of time. If the court has any other questions. Thank you, Mr. Hearst. Thank you. Mr. Baker. Since I can't see the screen, how much time do I have, sir? You have two and a half minutes. I won't take it. Or at least I won't take it all. I'll take some of it. Here's what we're dealing with, I think. The recent focal point of this discussion has been with regard to the second prong of the qualified immunity analysis. We put public officials, we put police officers in positions where they have a heck of a lot of interaction with the public. We ask police officers to make decisions all the time that they don't have the luxury of going back and asking questions of their superiors, getting a supervisor on the scene or calling the city attorney and asking, hey, I'm about to do this. This is what's come up. We have qualified immunity in place to provide those people we put out on the street with protection, that unless what you're doing is clearly established, not at a high generality level of it, I think opposing counsel was suggesting, but there has to be specificity. And what this court said, the recent case, the 2000 case that cited in my reply brief, this is my reply brief. Well, my opening brief is that specificity is especially important in the fourth amendment context where the court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. That's especially true in a situation of potentially violent arrest or when an officer is under threat or in harm or danger or those they are protecting are in harm or danger. But there's really nothing exigent going on in the circumstances of this case. They call it a decision. Sir, I will agree with you. This was a far cry from an officer having to make a decision in a split second about the use of lethal force. But I am not aware of any authority that says that unless you're in an exigent circumstance that, you know, you, you, you, there's the, the, the, the colleague, the second prong is somehow lowered as far as what the level of specificity is required. The second prong is the second prong. And I, and I, and I don't, and I don't think we, I'm not aware of any authority that would support the idea that just because it wasn't an exigent life-saving emergency, that the, that the standard for the second prong is somehow diminished. But if we're going to put our people out there to perform these public services, the law is such that we're going to provide them with a qualified immunity as long as what they're doing does not violate clearly established law. And I've heard nothing from the counsel for the opposition nor in his brief that would suggest that there was clearly established law either in this circuit or a robust authority among the other. I'm sorry. Was somebody asking a question? I apologize. No, I was just informing you that your time's expired. Thank you for your courtesy. I appreciate your off time this morning. All right. Thank you, Mr. Baker. Mr. Hurth, you used up your rebuttal time. We asked you quite a few questions. So I'll give you just a, just a few seconds to conclude your argument in response to something you may have heard. Well, actually, I'm sorry, Mr. Hurth, you're, I'm sorry. I guess I'm still on a moot. I did a moot court, a moot court last week in which both sides got to reply. So I guess I still got that in my head. As appellee, you don't get a rebuttal. So thank you for participating this morning and providing us argument in this case. And thank you also, Mr. Baker. Sorry about the power situation up there in Kansas City. I hope that gets resolved today as temperatures begin to rise. And that's very unfortunate. But we thank both council for participating this morning and for the briefing that's been submitted in the case. We'll continue to wrestle with the issues and render decision in due course. Thank you, council. You may be excused. Mr. Banz, I believe that concludes our scheduled arguments for today. Is that correct? That's correct, your honor. There was one additional case to be submitted without an oral argument. Number 20-2191, United States v. Delosta. Yes. All right. Okay. That being the...